# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY GUADALUPE V., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, *Commissioner of Social Security*,[1] <br><br> Defendant. | Case No.: 3:19-cv-00715-RBM <br><br> **ORDER:** <br><br> **(1) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;** <br><br> **(2) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND** <br><br> **(3) REMANDING THIS ACTION TO THE COMMISSIONER OF SOCIAL SECURITY** <br><br> **[Docs. 15, 18, 20.]** |

## I. INTRODUCTION

Plaintiff Rosemary Guadalupe V. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as Defendant. *See* 42 U.S.C. § 405(g); Fed R. Civ. P. 25(d).

1

Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"). (Doc. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 15); Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Doc. 18); and Plaintiff's Reply in Support of Motion for Summary Judgment (Doc. 20).

The parties consented to Magistrate Judge jurisdiction. (*See* Gen. Or. 707; Doc. 5.)

After a thorough review of the papers on file, the Administrative Record ("AR"), the facts, and applicable law, Plaintiff's Motion for Summary Judgement is **GRANTED IN PART** and **DENIED IN PART**, Defendant's Cross-Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the decision of the ALJ is **REMANDED**.

## II. PROCEDURAL BACKGROUND

On October 7, 2014, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Act, alleging disability beginning on December 18, 2011. (AR, at 149-161.[2]) After Plaintiff's claim was denied initially on March 26, 2015 (AR, at 94-97), and upon reconsideration on September 16, 2015 (AR, at 103-107), Plaintiff requested a hearing before an ALJ, which was held on November 21, 2017 (AR, at 37-53). Plaintiff appeared and was represented by counsel, and testimony was taken from Plaintiff and Victoria Rei, a vocational expert ("VE").

On March 1, 2018, the ALJ issued a written decision in which he found Plaintiff was not disabled as defined in the Act. (AR, at 20-32.) On February 22, 2019, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (AR, at 1-6.)

---

[2] All AR page-number citations refer to the numbers listed on the bottom right-hand corner of the page, rather than page numbers assigned by the CM/ECF system.

## III.  THE ALJ'S FINDINGS

In his decision, the ALJ initially determined Plaintiff met the insured status requirements of the Act through December 31, 2016. (AR, at 25.) The ALJ then followed the five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 18, 2011, the alleged onset of disability. (AR, at 25.)

At step two, the ALJ found Plaintiff suffers from carpal tunnel syndrome, a severe impairment. (*Id.*)

At step three, the ALJ found Plaintiff does not have an impairment of combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR, at 28.)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR, at 28.) Specifically, Plaintiff is able to:

> lift and carry up to 20 pounds occasionally and up to 10 pounds frequently . . . stand, or walk 6 hours in an 8-hour workday . . . perform tasks where there is a frequent but not constant requirement for [stooping], crouching, kneeling, and climbing stairs . . . perform tasks where there is no requirement for crawling or climbing ropes, ladders, or scaffolds . . . perform tasks where there is no requirement for forceful gripping or torqueing, but [Plaintiff] can do normal handling and fingering.

(*Id.*)

At step four, the ALJ found Plaintiff was capable of performing past relevant work as an "Office Manager (sedentary, skilled with an SVP of 7), as found in the *Dictionary of Occupational Titles (DOT)* at catalogue #169.167-034." (*Id.*, at 32 (emphasis in original).)

Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the [Act], from December 18, 2011, through the date of []his decision . . . ." (*Id.*)

/ / /

## IV. ISSUES IN DISPUTE

As set forth in the parties' moving and responding papers, the disputed issues are as follows:

1. Whether the ALJ properly discounted Plaintiff's subjective testimony regarding an alleged disability due to carpal tunnel syndrome (Doc. 15, at 7-10; Doc. 18, at 10-18); and

2. Whether the ALJ properly assessed Plaintiff's mental health impairment at step two of the evaluation process (Doc. 15, at 11-13; Doc. 18, at 18-22).

## V. STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. §§ 405(g), 1383(c). "As with other agency decisions, federal court review of social security decisions is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 2003).

In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

/ / /

When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the ALJ. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is not within the Court's province to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193.

## VI. **DISCUSSION**

### A.  **The ALJ Properly Discounted Plaintiff's Subjective Testimony.**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting her testimony that her pain inhibited the higher dexterity required to perform her past job as an office manager, therefore, the ALJ's RFC finding is unsupported by substantial evidence. (Doc. 15, at 7-10.) Defendant responds that the ALJ reasonably provided proper and compelling reasons to discredit Plaintiff's subjective testimony, and came to a reasonable conclusion based on substantial evidence. (Doc. 18, at 10-18.)

In assessing the credibility of a claimant's testimony regarding the intensity of symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal citation omitted). First, the ALJ determines "whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the . . . symptoms alleged." *Id.* (internal quotations and citations omitted). If the claimant presents such evidence to satisfy the first step of the analysis, an ALJ can reject the claimant's subjective allegations of impairment "only upon (1) finding

5

evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1995) (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (clear and convincing reasons exist to discredit a claimant's subjective complaint testimony when the ALJ points to specific evidence in the record which undermines the claim of disability).

In weighing a claimant's credibility, the ALJ may consider the extent to which a claimant's allegations of disabling impairments are consistent with objective medical evidence, the claimant's daily activities and the claimant's ability to treat symptoms with medication. *Lingenfelter*, 504 F.3d at 1040; *see also Crosby v. Comm'r of Soc. Sec. Admin.*, 489 Fed. App'x. 166, 168 (9th Cir. 2012) (it is proper to consider medical records to evaluate credibility of claimant's subjective statement of impairment). An ALJ may discredit a claimant's impairment, but the ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (finding inconsistencies in claimant's reported symptoms and activities supported ALJ's decision discrediting claimant's subjective complaints of impairment).

Here, the ALJ provided clear and convincing reasons to discredit Plaintiff's subjective complaint testimony by pointing to specific evidence in the record which undermines Plaintiff's complaints, such as inconsistencies between Plaintiff's subjective allegations and her daily activities, the objective medical evidence, and within the testimony itself.

At the outset, the ALJ cited to several inconsistencies in Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms. (AR, at 29.) The ALJ cited to Plaintiff's report that "she drops things and cannot feel with her hands, but has no issues taking care of herself, including dressing, taking care of her hair, and

shaving." (*Id.*) The ALJ also cited to Plaintiff's reports that she uses a walker, but noted "[s]he did not bring a walker to the hearing, and demonstrated no impairment of ambulation." (*Id.*) Although Plaintiff "stated that she cannot concentrate more than five minutes at a time," the ALJ cited to Plaintiff's hobbies, which include "watching television and reading," both of which "require at least a modicum of ability to attend, concentrate, and persist." (*Id.*)

Additionally, the ALJ discredited Plaintiff's subjective complaints of disability due to carpal tunnel syndrome by citing to inconsistences in the objective medical evidence. Plaintiff alleged that she has suffered wrist pain since 2012, but the medical evidence does not show any documented complaint until March 23, 2015. (AR, at 30.) When Plaintiff had EMG testing[3] on April 14, 2015, the testing was abnormal and indicated bilateral median sensory neuropathy at the carpal tunnel region; but a few days later at an orthopedic examination, Plaintiff showed no evidence of functional limitations, no abnormalities with her hands, and was assessed with a normal grip. (*Id.*) At another examination in October 2015, Plaintiff exhibited a positive Phalen's test[4] and 4/5 grip weakness, but showed no atrophy, swelling, warmth, tenderness of the soft tissues or joints, and a negative Tinel's sign.[5] (*Id.*)

---

[3] An electromyogram ("EMG") test is an electrodiagnostic examination measuring muscle response or electrical activity in response to a nerve's stimulation of the muscle; it is used to help detect neuromuscular abnormalities such as carpal tunnel syndrome. *See* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/electromyography-emg (last visited Dec. 27, 2019).

[4] Phalen's test is used in the diagnosis of carpal tunnel syndrome. Patients are told to press the dorsal surface of their hands together and hold the position for thirty to sixty seconds; this position increases the pressure in the carpal tunnel. Burning, tingling or numbness in the hands or fingers is a positive test and an indicator of carpal tunnel syndrome. *See* https://www.physio-pedia.com/Phalen%E2%80%99s_Test (last visited Dec. 27, 2019).

[5] Tinel's test is used in the diagnosis of carpal tunnel syndrome. A physician lightly taps over the irritated nerve. If the tapping elicits a sensation of tingling or "pins and needles" along the nerve, the test is positive and may indicate carpal tunnel syndrome. *See* https://www.physio-pedia.com/Tinel%E2%80%99s_Test (last visited Dec. 27, 2019).

Lastly, the ALJ analyzed Plaintiff's Function Report which alleges Plaintiff is unable to work because of pain in her hand and loss of grip and sensation. (AR, at 31.) The ALJ contrasted this allegation with Plaintiff's statement that she has no problem with personal care including dressing, bathing, caring for her hair, shaving, feeding herself, self-toileting, preparing her own meals, and performing household chores. (*Id.*) Further, Plaintiff reported going out by herself, shopping, and counting change. (*Id.*) While Plaintiff reported that she has difficulty lifting, seeing, using her hands, the ALJ noted Plaintiff failed to give examples or clarify any of these allegations. (*Id.*) In assigning the Function Report "little weight," the ALJ explained "claimant's subjective allegations exceed the objective medical evidence" and found the Function Report to be "inconsistent with the record as a whole." (*Id.*)

By citing to objective medical evidence, Plaintiff's daily activities and inconsistencies in Plaintiff's statements, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints of disability. *Lingenfelter*, 504 F.3d at 1040; *Berry*, 622 F.3d at 1228. Therefore, the ALJ came to a reasonable conclusion supported by substantial evidence and Plaintiff is not entitled to remand on this ground.

**B.     The ALJ Improperly Assessed Plaintiff's Mental Health Impairment at Step Two of the Evaluation Process.**

Plaintiff contends the ALJ improperly assessed her mental impairment as non-severe and thus erroneously concluded Plaintiff can perform her past job as an office manager. (Doc. 15, at 11-13.) Specifically, Plaintiff contends: (1) the ALJ should have asked the VE whether the limitations posed by Plaintiff's mental health impairment, however slight, preclude Plaintiff from performing her past job; and (2) the ALJ failed to account for psychiatric treatment notes which allegedly support a finding of a severe mental impairment. (*Id.*) Defendant counters that the ALJ properly weighed the evidence of record and the ALJ's finding of a non-severe mental impairment is based on substantial evidence. (Doc. 18, at 18-22.)

///

At step two of the sequential evaluation process, Plaintiff has the burden to show that she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least twelve months. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at step two); *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Social Security Administration has supplemented the five-step sequential evaluation process with additional regulations to assist the ALJ in determining the severity of mental impairments. *Maier v. Comm'r of Soc. Sec.*, 154 F.3d 913, 914-915 (9th Cir. 1998) (per curiam) (citing 20 C.F.R. § 416.920a). First, the ALJ must determine the presence or absence of certain medical findings relevant to the claimant's ability to work. 20 C.F.R §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (1) daily activites; (2) social functioning; (3) concentration, persistence or pace; and (4) the ability to adapt or manage oneself. *Id.*, at §§ 404.1520a(c)(2)-(4), 416.920a(c)(2)-(4). Third, after rating the degree of functional loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id.*, at §§ 404.1520a(d)(2), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the claimant's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including a specific finding as to the degree of limitation as to each of the functional areas described in 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). *Id.*, at §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

The areas of function are rated on a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; and (5) extreme. *Id.*, at §§ 404.1520a(c)(4), 416.920a(c)(4). If the degree of limitation is rated as "none" or "mild," then it will generally be concluded that the impairment is not severe. *Id.*, at §§ 404.1520a(d)(1), 416.1920a(d)(1).

However, for purposes of step two of the sequential evaluation, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original). By its own terms, step two is a *de minimis* test intended to weed out only the most minor impairments. *Bowen*, 482 U.S. at 153-154; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (stating step two inquiry is a *de minimis* screening device to dispose of groundless claims). Thus, an ALJ's conclusion that a claimant lacks a medically severe impairment must be supported by "clearly established medical evidence." *Webb*, 433 F.3d at 687 (internal citation omitted).

Here, the ALJ evaluated Plaintiff's mental impairments and concluded Plaintiff has only mild limitations in each of the four areas of function. (AR, at 27.) With respect to the first functional area—understanding, remembering or applying information—the ALJ found Plaintiff has only a mild limitation because Plaintiff is "able to cook, go[] to appointments, [and] fill out applications for General Relief[.]" (*Id.*) As to the second functional area—interacting with others—the ALJ found Plaintiff has only a mild limitation because Plaintiff's Function Report states that Plaintiff "talks with people every day[,]" and Plaintiff's consultative examinations demonstrated Plaintiff "made good eye contact and was cooperative." (*Id.*) As to the third functional area—concentrating, persisting or maintaining pace—the ALJ found Plaintiff has only a mild limitation because Plaintiff's chief hobbies are watching television or reading, activities which "require at least a modicum of ability to concentrate and attend." (*Id.*) As to the fourth and final functional area—adapting or managing oneself—the ALJ found Plaintiff has no limitation because Plaintiff "has no issues with self-care[,]" Plaintiff testified that she is homeless but

actually lives with her mother, and Plaintiff reported "she is able to go out alone, shop, and use a bicycle for transportation." (*Id.*)

While the ALJ followed the steps to evaluate the severity of Plaintiff's mental impairments, the ALJ committed error by ignoring treatment records which undermined his conclusion. *See Garrison*, *supra*, 759 F.3d at 1013 (finding ALJ committed error, in part, by ignoring treatment records which corroborated claimant's allegation of disability). As outlined below, the record as a whole contains evidence of an impairment sufficient to pass the *de minimis* threshold of step two. *Lingenfelter*, *supra*, 504 F.3d at 1035; *Webb*, 433 F.3d at 687. As such, the ALJ's conclusion that Plaintiff lacks a medically severe mental impairment is not supported by "clearly established medical evidence." *Webb*, 433 F.3d at 687.

Notably, the ALJ did summarize some treatment notes relating to Plaintiff's mental functioning. Summarizing a November 5, 2014 treatment note, the ALJ stated:

> [o]f note, the claimant was well groomed, and had good eye contact and was wearing 'decorative contacts.' Her mood was depresse[d], and affect flat. Her thought process was normal and direct. She contradicted her earlier report by stating that a year ago she hear[d] voices telling her not to listen to a person she would be talking to, or that a person 'isn't worth it,' people calling her name[s], and indicated that she had a voice tell her to 'jump off a bridge' one year prior, 'but not currently.' The claimant was alert and oriented, but had poor insight and judgment. The examiner deemed her reliability 'poor.'

(AR, at 26.)

The ALJ also summarized the relevant results of an August 28, 2016 Psychiatric Consultative Examination as follows:

> [t]he claimant complained of depression. She alleged panic attacks and feeling hyperactive. She reported auditory hallucinations and feeling paranoid. The claimant reported a depressed mood, insomnia, decreased appetite and energy . . . . In the examination, she made good eye contact and was neatly groomed. She was coherent and organized. Her mood was depressed and her affect was dysphoric. However, she was not tearful . . . . She was alert and oriented. Her recall and memory were largely intact, but she did need hints on testing. She was able to perform Serial 3s, and spell the

11

word WORLD backwards and forwards. The diagnostic impression was of . . . anxiety disorder, NOS, Psychotic Disorder, NOS and Bipolar Disorder NOS.

(*Id.*, at 26-27.)

However, the ALJ did not account for a February 26, 2016 mental status exam which indicated more than mild functional limitations. (AR, at 452-453.) This exam revealed Plaintiff's level of consciousness was lethargic, her speech was loud and pressured, her behavior was evasive, her affect was restricted, her mood was irritable, depressed, and anxious, she showed poor remote memory and an inability to concentrate, her motor function was agitated, and she suffered from daily auditory, visual, and tactile hallucinations. (*Id.*) After that exam, Plaintiff was diagnosed with unspecified affective disorder and psychotic disorder not due to a substance. (AR, at 457.) The ALJ also failed to account for another mental status exam on February 29, 2016, which showed Plaintiff had a depressed and anxious mood and suffered from auditory and visual hallucinations. (AR, at 465-466.)

The fact that Plaintiff made some improvements in mental functioning from the February 2016 exams to the August 2016 consultative exam does not mean Plaintiff does not suffer from an impairment which affects her ability to function in the workplace. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Rather, "such observations must be read in context of the overall diagnostic picture . . . ." *Id.* (internal citations and quotations omitted). On various occasions, Plaintiff suffered from visual, auditory and tactile hallucinations; Plaintiff's mood and affect were abnormal, irritable, depressed or anxious; and Plaintiff's diagnoses include various mental health disorders. (AR, at 322-328, 452-453, 465-466.) Considering the record as a whole, the *de minimis* test of severity with respect to Plaintiff's mental impairments is satisfied such that the ALJ's decision is based upon legal error. *Bowen*, 482 U.S. at 153-154; *Edlund*, 253 F.3d at 1158.

/ / /

/ / /

### i. Harmless Error & Remedy

An ALJ's error is harmless where the mistake is nonprejudicial to the plaintiff or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Importantly, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Id.* Applicable here, an error at the step two evaluation may be considered harmless if an ALJ extensively discusses the claimant's impairment at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted).

Here, the ALJ discussed Plaintiff's mental impairments in the RFC analysis which is incorporated in the step four determination. (AR, at 30-32.) However, the ALJ's failure to consider objective medical evidence from the February 2016 mental status exams may have prejudiced the ALJ's findings at steps four and five. Thus, the ALJ's error is not harmless, and the case must be remanded. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (remand for further proceedings is appropriate where additional proceedings could remedy defects in the ALJ's decision); *see also Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Upon remand, the ALJ must conduct a supplemental evaluation of the mental impairment evidence, and incorporate his findings into any future decision.

### VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision as to the severity of Plaintiff's mental impairment lacks substantial evidence, and Plaintiff is entitled to remand on that ground only. Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's Motion for Summary Judgement is **GRANTED IN PART** and **DENIED IN PART**; (2) Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; and (3) the matter shall be **REMANDED** to the Commissioner for further proceedings consistent with this Order. The Clerk of Court shall enter Judgment accordingly.

///

DATE: January 6, 2020

_(signature)_
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE